J-S48036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NELSON LUGO, | |
| Appellant | No. 2074 MDA 2016 |

Appeal from the Judgment of Sentence December 8, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0000418-2015

BEFORE:  OTT, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED SEPTEMBER 26, 2017**

Appellant, Nelson Lugo, appeals from the judgment of sentence imposed following his jury conviction of one count of terroristic threats.[1] Specifically, he challenges the trial court's grant of the Commonwealth's motion *in limine* to preclude him from entering into evidence an independent civil judgment.  He contends that the judgment would have refuted references in a 9-1-1 call, played for the jury, that he was a "squatter."  We conclude that the trial court properly exercised its discretion in excluding the civil judgment.  Accordingly, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2706(a)(1).

We derive the facts of the case from the trial court's opinion, and our independent review of the certified record.

On December 18, 2014, Appellant was living at 2018 Susquehanna Street in Harrisburg, Pennsylvania. (*See* Trial Court Opinion, 3/16/17, at 2). WCI Partners (WCI), a property management company, owned the adjoining row house, 2020 Susquehanna Street. On that day, Lori Fortini, then operations manager for WCI, was working with a crew of construction workers at 2020 Susquehanna to board up windows and doors which had been knocked out during an apparent attempt to break and enter. Ms. Fortini also directed one of the workers, Albert King, to inspect the adjoining building at 2018 Susquehanna (where Appellant lived) for similar damage, after she had noticed that the basement door of 2018 had been kicked in. Ms. Fortini thought, incorrectly, that 2018 was unoccupied. (*See* N.T. Trial, 11/02/16, at 22).

Mr. King testified that he knocked on the front door but got no response. (*See id.* at 60). When he knocked on the back door, he heard Appellant say, "If you don't get off my property, I'm gonna shoot you in the head." (*Id.* at 62; *see also id.* at 63). Mr. King went back over to 2020. In pertinent part, Ms. Fortini testified as follows:

> [Appellant] came out on the second-floor balcony, screaming at me. He used my name. He said, "Lori, why are you doing this? Call your people off. I've got a gun. I'm gonna shoot your ass. I have every right to," something along those lines.

(*Id.* at 28).

Ms. Fortini testified that her report of Appellant's words were "near verbatim." (*Id.* at 29). She told all the workers to leave and began to walk back to her office a few blocks way. On her way back she called 9-1-1 to report the incident. In this 9-1-1 call she referred to Appellant as a squatter. The tape of the call was played for the jury. (*See id.* at 31).

Appellant followed Ms. Fortini to her office on his skateboard. Ms. Fortini locked herself inside. Appellant began banging on the door. She called 9-1-1- a second time. That call was also played for the jury. (*See id.* at 38). Ms. Fortini testified that she was afraid Appellant had the gun he had said he had; she retreated upstairs to get out of the line of fire, until the police called and told her they were outside and wanted to speak to her.

In the meantime, Officer David Kyle and other Harrisburg police officers responded to the original 9-1-1 call. At first, they saw nothing around 2020 Susquehanna. While they were still looking, Albert King, the construction worker, approached them and identified a man nearby on a skateboard as Appellant. (*See id.*, 11/03/16, at 83). Appellant skated up to about fifty feet from them and said he wanted to report a trespass. (*See id.*).

As the police were talking to him, Appellant approached another twenty feet closer, and put his hands in his pockets. Another police officer asked him to remove them. Instead, Appellant turned around and skated

away. The police tried to follow in their patrol cars, but lost him. He later returned to 2018 Susquehanna, and eventually turned himself in to a police officer he knew personally. (***See id.*** at 86, 90).

Before trial, the court granted the Commonwealth's motion *in limine* to prevent Appellant from presenting evidence of judgment in an unrelated civil dispute, apparently with his landlord, which he maintained would vindicate his claim that he was a lawful tenant and, therefore, not a squatter.

At trial, Appellant testified that he told Albert King he was trespassing, and that he felt threatened. (***See id.*** at 104). He testified that he was a lessee of the property in question. (***See id.*** at 101, 111). He denied threatening to shoot Lori Fortini, or saying that he had a gun. (***See id.*** at 117). In fact, he denied ever being on the balcony. (***See id.***). The jury convicted him of one count of terroristic threats. (***See*** Trial Ct. Op., at 1).

On December 8, 2016, the trial court sentenced him to a term of six months' probation. (***See id.***; ***see also*** N.T. Sentencing, 12/08/16, at 4). This timely appeal followed.[2]

> Appellant presents one question for our review:
>
> Did not the court err in granting the Commonwealth's motion *in limine* to exclude relevant evidence necessary to rebut the prejudicial effect of the Commonwealth's introduction of statements that [Appellant] was a "squatter" at the real property where the alleged criminal offense occurred?

---

[2] Appellant filed a concise statement of errors on January 12, 2017. The trial court filed an opinion on March 16, 2017. ***See*** Pa.R.A.P. 1925.

- 4 -

(Appellant's Brief, at 4) (unnecessary capitalization omitted) (quotation marks in original).

Appellant asserts that the trial court erred in precluding him from entering evidence that he had received a civil judgment based in part on a finding that he had a "legal possessory interest as a tenant at . . . 2018 Susquehanna Street[.]" (***Id.*** at 16). He maintains that this Court should reverse his judgment of sentence and remand for a new trial. (***See id.*** at 17). We disagree.

> Initially, we note that, when reviewing the denial of a motion *in limine,* we apply an evidentiary abuse of discretion standard of review. Thus, we review the denial of the motion for an abuse of discretion. In general, relevant evidence, *i.e.,* evidence that logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable [,] or supports a reasonable inference or presumption regarding a material fact, is admissible. However, although a court may find that evidence is relevant, the court may nevertheless exclude the evidence if its probative value is outweighed by the likelihood of unfair prejudice. Thus, in exercising its discretion, the trial court must balance the evidentiary value of the evidence against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury.

***Commonwealth v. Hitcho***, 123 A.3d 731, 747–48 (Pa. 2015) (citations, internal quotation marks and other punctuation omitted).

The offense of terroristic threats is defined, in pertinent part, by the Crimes Code, as follows:

> **Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

> (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S.A. § 2706(a).

Here, Appellant's claim does not merit relief. Even if we were to assume for the sake of argument, as the trial court does, that Appellant had a proven legal possessory interest in the premises as a tenant at 2018 Susquehanna, that fact is not relevant to this case. The jury convicted Appellant of terroristic threats, not squatting. Proof that Appellant was or was not a squatter does not make his guilt for making terroristic threats more or less probable. Tenancy in leased premises, lawful or otherwise, is not an element of the crime.

Moreover, Appellant could, and did, testify that he was a lawful tenant. (**See** N.T. Trial, at 101, 111). The jury heard Appellant testify that he had signed a lease, and referred to provisions in it.[3] We discern no abuse of discretion in the trial court's exclusion of the complicated and irrelevant evidence of an unrelated civil action, and decline to disturb its evidentiary ruling.

_____

[3] Further evidence of Appellant's tenant status appears to be problematic. Although Appellant testified that he had signed a lease, and referred to provisions in it, he never attempted to introduce the lease as evidence. (**See** N.T. Trial, at 101). In fact, he testified that "somebody else" was the primary householder. (**See id.** at 111). Appellant also conceded that he had been told to leave by "the code inspector." (**Id.**). He denied there was mail service to the residence, or any other utilities. (**See id.**).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2017